IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Dinger and Dinger     :
Investments Three LLC,      :
          Appellants   :
                       :
         v.         :   No. 110 C.D. 2025
                       :   Argued: November 6, 2025
Borough of Whitehall Zoning   :
Hearing Board, and Borough of  :
Whitehall                 :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER     FILED: December 8, 2025

Michael Dinger and Dinger Investments Three LLC (together, Dinger), appeal the December 27, 2024 Order of the Court of Common Pleas of Allegheny County (trial court), which affirmed and dismissed Dinger's appeal of the April 16, 2024 Decision of the Borough of Whitehall Zoning Hearing Board (Board). In the Decision, the Board affirmed the Borough of Whitehall's (Borough) denial of Dinger's request for a permit to install a "Limited Amusement Arcade" as an accessory use to a laundromat owned and operated by Dinger under Chapter 180 of the Code of the Borough (Zoning Ordinance).[1] Dinger argues the trial court and

---

[1] BOROUGH OF WHITEHALL, ALLEGHENY CNTY., PA., ZONING ORDINANCE §§ 180.1-180.146.2 (2025). The Zoning Ordinance defines Limited Amusement Arcade as "[a]n accessory
**(Footnote continued on next page…)**

Board erred because Dinger's request satisfied Section 180.81.4.2.1.1 of the Zoning Ordinance, which provides that a Limited Amusement Arcade may be permitted as an accessory use where it does not occupy more than 25% of the gross square footage of the primary use. After review, the Court affirms the trial court's Order because the Board did not err in concluding that a Limited Amusement Arcade is not permitted as an accessory use to a laundromat under the Zoning Ordinance.

## I.  BACKGROUND

Dinger owns and operates a laundromat on a leased property in the C-3 Commercial District of the Borough. On January 17, 2024, Dinger submitted a Zoning Permit Application to the Borough seeking to install a Limited Amusement Arcade in the laundromat as an accessory use pursuant to Section 180.81.4.2.1.1 of the Zoning Ordinance. The Borough denied the Application, reasoning "Limited Amusement Arcades are not permitted in [l]aundromats" under the Zoning

---

use to an establishment where three (3) or less Amusement Devices are installed and are incidental to the principal use of the establishment." *Id.* § 180.4.2 (capitalization removed). An Amusement Device is defined as follows:

> Any mechanical, electrical, or electromechanical device, machine or apparatus whatsoever for the playing of games of skill and amusement, which devices or apparatus are commonly known as "pinball machines[,"] "claw machines," "video games[,"] and "arcade games[,"] or upon which games are played, after the insertion therein of a coin or other disc, slug, or token or for which fees are paid to an attendant. The term does not include casino-style or other games of chance in which the outcome[] is determined by factors unpredictable by the player or games in which the player may not control the outcome of the game through skill. This definition is not intended to and does not include merchandise vending machines or coin-operated mechanical or electrical musical devices commonly know[n] as "jukeboxes."

*Id.*

Ordinance. (Reproduced Record (R.R.) at 23a (italics removed).) Dinger appealed the denial to the Board, which held a hearing on March 19, 2024.

On April 16, 2024, the Board affirmed the Borough. The Board reasoned that Section 180.81.4.1 of the Zoning Ordinance unambiguously restricts Limited Amusement Arcades as an accessory use to five of the ten primary uses permitted in the C-3 Commercial District. Because a laundromat is not one of the five listed primary uses in Section 180.81.4.1, the Board concluded that Limited Amusement Arcades may not be installed in laundromats as an accessory use. The Board further concluded that Dinger's reliance on Section 180.81.4.2.1.1 of the Zoning Ordinance was misplaced because, contrary to Dinger's interpretation, that provision does not expand the primary uses to which Limited Amusement Arcades may be accessory. Rather, the Board explained, Section 180.81.4.2.1.1 "is merely one of seven [] specific requirements applicable to Limited Amusement Arcades in all of the principal uses expressly permitted by [Section 180.81.4.1 of the] Zoning Ordinance" and "merely limits the size of the Limited Amusement Arcade to ensure that it is supplemental to the permitted primary use." (Decision ¶¶ 16, 18.) According to the Board, Dinger's contrary interpretation would render Section 180.81.4.2.1.1 "mere surplusage" because "it would permit a Limited Amusement Arcade in every use permitted in the [C-3] Commercial District." (*Id.* ¶ 17.) Therefore, the Board concluded the Borough properly denied the Application.

Dinger timely appealed the Board's Decision to the trial court, which affirmed the Board and dismissed Dinger's appeal without taking additional evidence. Agreeing with the Board that the Zoning Ordinance is not ambiguous, the trial court opined that Limited Amusement Arcades are only permitted as an accessory use to the five primary uses listed in Section 180.81.4.1. The trial court also agreed with

3

the Board that Section 180.81.4.2.1.1 of the Zoning Ordinance "merely limits the size of the Limited Amusement Arcade to ensure that it is supplemental to the permitted primary use and does not expand the principal uses in which Limited Amusement Arcades may be placed" and Dinger's interpretation would render the provision "mere surplusage." (Trial Court's Opinion at 5-6.) The trial court thus explained that "[i]t is not relevant that the laundromat's proposed floor plan would comply with the spacing requirements or that the Amusement Devices would be supplemental to the primary use" because "[a] principal use's inclusion into that category of five is a prerequisite to then be subject to the seven specific regulations in [Section] 180.81.4.2." (*Id.* at 6-7.) Because a laundromat is not one of the five primary uses listed in Section 180.81.4.1 of the Zoning Ordinance, the trial court concluded that the Board did not err in affirming the denial of Dinger's Application.

Dinger now appeals the trial court's Order to this Court.[2]

## II.   DISCUSSION

The overarching issue presented to the Court is whether a Limited Amusement Arcade is a permitted accessory use to a laundromat under the Zoning Ordinance. To address this issue, the Court must interpret the Zoning Ordinance, which is "a question of law for which our standard of review is de novo and our scope of review is plenary."[3] *Weiler v. Stroud Twp. Zoning Hearing Bd.*, 300 A.3d 1121, 1126 (Pa.

---

[2] "Where, as here, the trial court did not take any additional evidence, appellate review of the decision of a zoning hearing board is limited to determining whether the board abused its discretion or committed legal error." *Township of Exeter v. Zoning Hearing Bd. of Exeter Twp.*, 962 A.2d 653, 659 (Pa. 2009).

[3] The Court remains "bound by the facts as found by the Board that are supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 207 A.3d 886, 898-99 (Pa. 2019) (citation omitted).

4

Cmwlth. 2023). Nonetheless, "a zoning board's interpretation of its zoning ordinance is to be given great weight as representing the construction of a statute by the agency charged with its execution and application." *Plum Borough v. Zoning Hearing Bd. of Borough of Plum*, 310 A.3d 815, 823 (Pa. Cmwlth. 2024) (citation omitted). "However, we will not defer to a zoning hearing board's interpretation where such interpretation is 'clearly erroneous,' and generally, a board's failure to heed the plain text of the ordinance amounts to legal error which this Court will not ignore." *Id.*

In determining whether the zoning hearing board's interpretation is erroneous, we may apply the principles contained in the Statutory Construction Act of 1972.[4] *Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 207 A.3d 886, 899 (Pa. 2019). Under Section 1921(a) of the Statutory Construction Act, "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the [legislative body]." 1 Pa.C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* "However, when the statutory language is ambiguous, we may look to Section 1921(c) of the Statutory Construction Act for guidance." *Weiler*, 300 A.3d at 1126. "An ambiguity exists when language is subject to two or more reasonable interpretations, not merely because two conflicting interpretations may be suggested." *Id.* Because the Board's interpretation of the Zoning Ordinance is at issue, we start with the text itself. *See Plum Borough*, 310 A.3d at 823.

"Laundry and cleaning establishments" are one of ten permitted uses in the Borough's C-3 Commercial District. *See* BOROUGH OF WHITEHALL, ALLEGHENY

---

[4] 1 Pa.C.S. §§ 1501-1991.

CNTY., PA., ZONING ORDINANCE § 180.62.1 (2025). Pursuant to Section 180.81.4.1 of the Zoning Ordinance,

> Limited Amusement Arcades containing three or less Amusement Devices shall be considered customarily incidental and permitted as an accessory use to the following primary uses:
>
> > 180.81.4.1.1  Bowling Alley
> >
> > 180.81.4.1.2  Convenience Store
> >
> > 180.81.4.1.3  Grocery Store
> >
> > 180.81.4.1.4  High-Turnover Restaurant
> >
> > 180.81.4.1.5  Low-Turnover Restaurant

*Id.* § 180.81.4.1 (capitalization removed).  In turn, Section 180.81.4.2.1.1 provides:

> Limited Amusement Arcades containing three or less Amusement Devices may be permitted as an accessory use, supplemental to the permitted primary use of a premises, **as outlined in this Section**, so long as no more than twenty-five (25) per cent of the gross square footage of the floor area of the premises is utilized for Amusement Devices.  For the purposes of this Section, each Amusement Device is hereby determined to utilize twenty-five (25) square feet.

*Id.* § 180.81.4.2.1.1 (capitalization removed; emphasis added).  Section 180.81.4.2.1.1 is one of seven provisions that fall under a subsection of the Zoning Ordinance titled "Specific Regulations."  *Id.* § 180.81.4.2.

Here, the Board interpreted Section 180.81.4.1 of the Zoning Ordinance as restricting Limited Amusement Arcades as an accessory use to the five primary uses listed in that provision and Section 180.81.4.2.1.1 as specifically regulating the size of Limited Amusement Arcades in relation to the five permitted primary uses.

Dinger argues that the Board's interpretation ignores the plain language of the Zoning Ordinance. According to Dinger,

> [b]y its plain language, Section 180.81.4.2.1.1 provides that a [L]imited [A]musement [A]rcade <u>may be permitted</u> in locations other than the five identified in Section 180.81.4.1, as long as the relative footprint of the premises is large enough to accommodate the relative footprint of the amusement and . . . the accessory use is supplemental to the permitted primary use.

(Dinger's Brief (Br.) at 13 (emphasis in original).) Dinger therefore asserts that, under the Zoning Ordinance, Limited Amusement Arcades shall be permitted in the five primary uses listed in Section 180.81.4.1 and may be permitted in other primary uses pursuant to Section 180.81.4.2.1.1. Dinger further argues that if the Zoning Ordinance intended to restrict Limited Amusement Arcades to only the five primary uses listed, it would expressly state as such. At the very least, Dinger contends, the Zoning Ordinance is ambiguous and should be construed in Dinger's favor to permit "the broadest possible use of land." (*Id.* at 19 (citation omitted).)

The Borough retorts that the Zoning Ordinance is not ambiguous and that Section 180.81.4.1 restricts Limited Amusement Arcades as an accessory use to the five primary uses listed therein.[5] Section 180.81.4.2.1.1, the Borough maintains, does not expand this exhaustive list but merely provides a specific regulation that must be complied with for a Limited Amusement Arcade to be accessory to the listed primary uses. Therefore, the Borough argues that "to qualify for a zoning permit to operate a Limited Amusement Arcade in the Borough, the [p]rincipal [u]se of the property must be one of the five uses listed in Section 180.81.4.1 of the Zoning Ordinance ***and*** the applicant must establish compliance with ***all seven*** specific

---

[5] On May 22, 2025, the Board joined in the brief of the Borough.

criteria set forth in Sections 180.81.4.2.1.1 to 180.81.4.2.1.7." (Borough's Br. at 12 (emphasis in original).)

We agree with the Borough and the Board. To start, Section 180.81.4.1 of the Zoning Ordinance provides that Limited Amusement Arcades "shall be **considered** customarily incidental and permitted as an accessory use **to the following primary uses**." ZONING ORDINANCE § 180.81.4.1 (emphasis added). Section 180.81.4.1 thus indicates that Limited Amusement Arcades are only considered an accessory use to the enumerated primary uses—an exclusive list. Moreover, Section 180.81.4.2.1.1 provides that, if compliant with certain square footage requirements, Limited Amusement Arcades "may be permitted as an accessory use, **supplemental to the permitted primary use** of a premises, **as outlined in this Section**." *Id.* § 180.81.4.2.1.1 (emphasis added). Section 180.81.4.2.1.1 therefore reinforces that Limited Amusement Arcades are supplemental to one of the primary uses listed in Section 180.81.4.1. Accordingly, Section 180.81.4.2.1.1 does not expand the exclusive list of primary uses to which Limited Amusement Arcades are considered accessory but provides a specific regulation as to the size of the accessory use in relation to the permitted primary use. The title of the subsection under which Section 180.81.4.2.1.1 falls further buttresses the plain language of the provision because it indicates that the provision is a specific regulation applicable to Limited Amusement Arcades as accessory to the listed primary uses. *See* Section 1924 of the Statutory Construction Act, 1 Pa.C.S. § 1924 ("The headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof.").

In summary, although Dinger presents a conflicting interpretation, the Zoning Ordinance is not ambiguous. By its plain language, the Zoning Ordinance provides

8

that Limited Amusement Arcades are considered customarily incidental and a permitted accessory use to bowling alleys, convenience stores, grocery stores, high-turnover restaurants, and low-turnover restaurants and, among other specific regulations, may not occupy more than 25% of the gross square footage of the floor area of those five permitted primary uses. ZONING ORDINANCE §§ 180.81.4.1, 180.81.4.2.1.1. Accordingly, because a laundromat is not one of the five primary uses listed in Section 180.81.4.1, a Limited Amusement Arcade is not considered a permitted accessory use to a laundromat under the Zoning Ordinance, regardless of whether the proposed Limited Amusement Arcade would comply with the square footage requirements of Section 180.81.4.2.1.1.

## III. CONCLUSION

For the foregoing reasons, the Board did not err in affirming the Borough's denial of Dinger's Application. For the same reasons, the trial court did not err in affirming the Board. Therefore, the Court affirms the trial court's Order.

_____
RENÉE COHN JUBELIRER, President Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Dinger and Dinger    :
Investments Three LLC,    :
                Appellants    :
    :
           v.    :    No. 110 C.D. 2025
    :
Borough of Whitehall Zoning    :
Hearing Board, and Borough of    :
Whitehall    :

# **O R D E R**

**NOW**, December 8, 2025, the December 27, 2024 Order of the Court of Common Pleas of Allegheny County is **AFFIRMED**.

_____
RENÉE COHN JUBELIRER, President Judge